E. G. Loomis et al., Respondents, *v.* The Wabash, St. Louis & Pacific Ry. Co., Appellant.

### April 13, 1885.

1. Contract of Affreightment—Delivery—Stipulation to Deliver at a Certain Point not Complied with by a Delivery Short of that Point—Delivery Beyond Terminus.—A stipulation to transport freight to a point named therein (in this case, Lexington, Mo.) is not complied with by delivering the freight at a point short of its destination, situated in another county, with a large river intervening, unbridged, and accessible only by ferry boat. A common carrier may, by contract, extend its undertaking to deliver beyond the *terminus* of its line of transportation.

2. Same—Consignee—Privileges of.—A consignee of goods, if he desires to do so, may submit to the wrong of an overcharge, tender the overcharge under protest; and, if the money be accepted, he may afterward recover back the amount wrongfully exacted. But this is merely a right or privilege accorded by law, and he is under no duty to exercise the privilege.—Hutchinson on Carriers, 447.

3. Practice—Common Error not Entitled to be Complained of on Appeal.—It is settled by the repeated decisions of the Supreme Court of this state that the appellant cannot be heard to allege that, as error of the trial court, which he invited the court to commit. It does not lie in his mouth to complain of a technical

blunder which he waived on the trial by adopting the error.—
*Walker* v. *Owen*, 79 Mo. 563 ; *Davis* v. *Brown*, 62 Mo. 313.

4. PRACTICE ACT—SEPARATE OR INDEPENDENT CAUSES OF ACTION (RE-
VISED STATUTES,1879, SECT. 3512)—PROVISIONS NOT APPLICABLE TO
JUSTICES' COURTS.—Under the Practice Act (Rev. Stat., 1879, sect.
3512) the plaintiff is authorized to unite in the same petition
several causes of action, " but the causes of action so united must
be separately stated, with the relief sought for each cause of
action, in such manner as that they may be intelligibly distin-
guished." This provision, however, applies only in practice in the
circuit or other courts of like jurisdiction, and the construction
has been that there must be a separate finding by the jury on
each count. Justices' courts have no jurisdiction except as con-
ferred by statute, and do not proceed according to common law
methods.—*Hausberger* v. *Pacific R. R. Co.*, 43 Mo. 196. Section
2850, Rev. Stat. 1879, concerning justices' courts, declares "the
plaintiff may unite in his suit as many causes of action as he may
have," but there is no requirement that the causes of action
shall be separately stated. The common law rule was that the jury
must make a finding on all the issues. but this rule does not apply
to proceedings in justices' courts. Following *Flesh* v. *Christopher*,
11 Mo. Appeals 483. The legislation in this state indicates the
purpose to simplify the proceedings as far as practicable in such
courts. The Practice Act does not apply to the trial of a cause
appealed from a justice's court.—*Sonlia* v. *Kellerman*, 18 Mo. 509.
The pleadings are not reformed on appeal. And as on appeal it is
a trial *de novo*, the same character of judgment which is good in
the justice's court must logically be good on appeal.

APPEAL from Lafayette Circuit Court, HON. JOHN P.
STROTHER, Judge.

*Affirmed.*

Statement of case by the court.

This action was instituted in a justice's court, based on
the following sta ement:

Wabash, St. Louis & Pacific Ry. Co., in account with
E. G. Loomis and Albert Loomis, partners under firm
name of E. G. Loomis & Co., Dr.:

January, 1882, To unreasonable delay in trans-
  porting and delivering 90 barrels of salt
  from Chicago, Ill., to Lexington, Mo., to
  damage of said E. G. Loomis and Albert
  Loomis .............................. $22 00

September, 1885, To damage by unreasonable
    delay in transporting and delivering 90
    barrels of salt, from Chicago, Ill., to Lex-
    ington, Mo., to damage of said E. G. &.
    Albert Loomis..........................    42 00
                                              ———————
        Total...............................$64 00

The plaintiffs recovered judgment for the sum of $36;
from which defendant duly prosecuted its appeal to the
circuit court. On the trial in the latter court before a
jury, the plaintiffs read in evidence the following bills of
lading:

Wabash, St. Louis & Pacific Railroad Co.
            Office No. 85 Clark Street.
                    Chicago, Ill., Sept. 21st, 1881.
Bill of Lading No. 8,277.

Received from A. J. Latham the following packages,
contents unknown, in apparent good order, marked and
numbered as per margin:

To be transported by the Wabash, St. Louis &
Pacific Railway Co., and forwarding lines with which
it connects, until the said goods or merchandise shall
have reached the point named in this contract, on the
following terms and conditions, viz.: That the W., St. L.
& P. Ry. Co., and forwarding lines with which it con-
nects and which receive said property, shall not be lia-
ble for leakage of oils, or any other kinds of liquids,
breakage of any kind of glass, earthen or queensware,
carboys of acids, or articles packed in glass, stoves,
stove furniture, castings, machinery, carriages, furniture,
musical instruments of any kind, packages of eggs, or
for rust of iron and iron articles, or for loss or damage
by wet, dirt, fire, or for loss of weight, or for condition
of baling on hay, hemp or cotton, or for loss or damage
of any kind on any article whose bulk requires it to be
carried on open cars; nor for damage to perishable
property on any kind occasioned by delays from any
cause, or by change of weather; nor for loss or damage

to any article of property whatever; by fire or other casualty while in transit, or while in depots or other places of transhipment, or at depots or landings at points of delivery; nor for loss or damage by fire, collision, or the dangers of navigation while on the seas, rivers, lakes or canals. All goods and property under this contract will be subject, at owner's cost, to necessary cooperage or baling, and are to be transported to the depots of the companies or landings of the steamboats or forwarding lines at point receipted to for delivery. It is further agreed, that the W., St. L. & P. Ry. Co., and forwarding lines with which it connects, shall not be held accountable for any damage or deficiency in packages after the same shall have been receipted for in good order by the consignees or their agents, or the next carrier beyond the point which this instrument contracts. Consignees are to pay freight and charges upon the goods or merchandise in lots or parts of lots, as they are delivered to them. It is further stipulated and agreed, that in case of any loss, detriment or damage done to or sustained by any of the property herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening of such loss, detriment or damage, and the carrier so liable shall have the full benefit of any insurance that may have been effected upon or on account of said goods. And it is further agreed that the amount of loss or damage so accruing so far as it shall fall upon the carrier above described, shall be computed at the value or cost of the said goods or property at the place and time of shipment under this contract. This contract is executed and accomplished, and the liabilities of the companies as common carriers thereunder terminate on the arrival of the goods or property at the station or depot of delivery (and the companies will be liable as warehousemen only thereafter), and unless removed by the consignee from the station or depot of delivery

within twenty-four hours of their said arrival, they may be removed and stored by the companies at the owner's expense and risk. NOTICE.—In accepting this contract, the shipper or agent of the owner of the property carried, expressly accepts and agrees to all its stipulations, exceptions, and conditions.

In witness whereof, the agent has affirmed to ———— bills of lading, all [of this tenor and date, one of which being accomplished, the others to stand void. This receipt to be presented without alteration or erasure.

N. J. HOWE, <i>Cont'g Agent.</i>

C. L. RISING, <i>Gen. Agent.</i>

Marks, Consignee and Destination :

E. G. Loomis & Co., Lexington, Mo.

Description of Articles. Weight sub. to cor. 90 brl. Sack Fine Salt.

This Contract is from Chicago, Ill.,
To Lexington, Mo.,
Via......
Subject to the classification of connecting lines.

| Through a. | per 100 lbs. 1st class |
| " a. | " " 2nd " |
| " a. | " " 2rd " |
| " a. | " " 4th " |
| " a. | " " 5th " |
| " a. 60 cts. | " Barrel |
| " a. | " car of 20,000 lbs. |

Adv. Charges.

G. L. RISING, <i>Gen. Agent.</i><br><i>Per Bern.</i>

The second bill of lading is like the above, with the exception that it bears the date January 4, 1882.

The evidence, on the part of the plaintiffs, tended to show that they were merchants at Lexington, Mo., and made the purchase of salt in Chicago for retail at their business house in Lexington. The first assignment arrived in due course of time at one of defendant's stations on the north side of the Missouri river (Lexington

being on the south side) and about one mile from Lexington. There was no bridge over the river at that point, and the only mode of transporting freight from that station to Lexington was by wagon and ferry boat. This freight lay at said station 22 days before it was delivered in Lexington. There seems to have been some controversy between the parties as to whose duty it was to bring the freight from the station across the river to Lexington. It was finally delivered in Lexington, presumably by the defendant.

. The other shipment arrived in due course of time at the depot station at Lexington on the line of the Mo. Pacific Railroad Company. When applied for by plaintiffs, the defendant's station agent refused to deliver the salt until a charge of $8.00 for freightage was paid, which plaintiffs declined to pay for the reason that it was an overcharge in excess of the contract price. The goods were detained at the station for ten days, until it was discovered by the station agent that plaintiffs were right, and the charge was wrong.

The suit was to recover damages subsequent upon these delays. There was evidence offered and given on the part of plaintiffs tending to show that if the salt had been delivered according to contract, the plaintiffs would have been able to sell it for much more than they could realize on it at the time of delivery.

It may be conceded for the purpose of the case that defendant introduced evidence tending to show that the station across the river was the nearest station to Lexington on defendant's line of roads, and that merchants at Lexington generally hauled goods from that station to Lexington.

The court gave the following instructions for the plaintiffs:

1. The jury are instructed that there is no evidence or claim for damages in the case for any injury to the goods shipped, namely, said lots of salt, or either of them, nor any deterioration in its quality, by reason of said alleged delay in the delivery thereof; and even if the jury

should find for the plaintiffs in this cause, the measure of plaintiffs' damages cannot exceed the difference in the market price of such salt at Lexington, Missouri, at the time the same should have been delivered, and the market price thereof at Lexington, Missouri, at the time it was actually delivered, *and within a reasonable time thereafter*, not exceeding the amount charged in plaintiffs' account on the respective lots of salt.

2. Plaintiffs cannot recover in this case any speculative damages. That is, they cannot recover any amount from defendant on account of their failure to get unusual, exorbitant, and extra prices for salt, *beyond a reasonable market value, as the jury may believe from the evidence*, growing out of the accidental scarcity of the article in Lexington market just at the time of such delay and such delivery.

The court gave the following instructions on behalf of defendant:

4. That the plaintiffs in this case can only recover, if any, such damages as they may have actually sustained by the delay of the salt in question, not exceeding, however, the amounts respectively claimed therefor in plaintiffs' account, and in determining the amount of such damages, the jury are to consider alone the market price and value of such salt as specified in other instructions given.

The defendant also asked and the court gave the following instructions, with the exception of the parts in italics, which were added by the court against the objection of defendant:

1. The jury are instructed that there is no evidence or claim for damages in the case for any injury to the goods shipped, namely, said lots of salt, or either of them, nor any deterioration in its quality, by reason of said alleged delay in the delivery thereof; and even if the jury should find for the plaintiffs in this cause, the measure of plaintiffs' damages cannot exceed the difference in the market price of such salt at Lexington, Missouri, at the time the same should have been delivered,

and the market price thereof at Lexington, Missouri, at the time it was actually delivered, *and within a reasonable time thereafter*, not exceeding the amount charged in plaintiffs' account on the respective lots of salt.

2. Plaintiff cannot recover in this case any speculative damages. That is, he cannot recover any amount from defendant on account of his failure to get unusual, exorbitant, and extra prices for salt, *beyond a reasonable market value, as the jury may believe from the evidence*, growing out of the accidental scarcity of the article in Lexington market just at the time of such delay and such delivery.

The court then refused the following instructions asked by defendant:

2. If the jury believe from the evidence that plaintiffs could have prevented or avoided the damages to them by reasonable expense and exertion on their part, they were bound to do so, and cannot recover of defendant any damages they could have prevented or avoided by reasonable expense and exertion on their part.

3. Plaintiffs cannot recover in this case any speculative damages. That is, they cannot recover any amount from defendant on account of their failure to get unusually exorbitant and extra prices for salt, growing out of the accidental scarcity of the article in the Lexington market just at the time of such delay and such delivery.

5. That under the evidence offered herein plaintiffs cannot recover, and the jury will find for the defendant.

6. That if the January lot of salt arrived in Lexington in due course of transportation, without delay, and was not delivered to plaintiffs, for the reason that plaintiffs refused to pay defendant certain overcharges of freight of the amount of eight dollars, and if the jury believe that plaintiffs could have obtained said salt by the payment of said sum of eight dollars, then plaintiffs cannot recover in this action damages for delay of said January salt in excess of said sum of eight dollars.

7. That if the jury believe from the evidence that plaintiffs finally received the salt in question from defend-

ant, without making objection at the time of the delivery to the delay in delivering, then plaintiffs, by such receipt of said salt, waived all question of damages for delay in delivering, and the jury will find for the defendant.

The jury returned a verdict in favor of plaintiffs, assessing the damage at $40.00. After ineffectual motions for new trial and in arrest of judgment, the defendant prosecuted its appeal to this court.

GEORGE S. GROVER, for the appellant.

I. Under the contract in evidence the liability of defendant ceased upon the arrival of the salt at its depot in Lexington, the end of its route.—Lawson on Contracts of Carriers, sect. 88.

II. As to the second shipment, if the freight bill exceeded the contract rule, it was plaintiffs' duty to pay the charges under protest and sue to recover the overcharge. They ought not to recover in this action any enhanced damage, on account of their own failure to receive the salt and pay the overcharge.—*Douglass* v. *Stephens*, 18 Mo. 366; *K. P. R. R. Co.* v. *Mihlman*, 17 Kas. 233; *Loku* v. *Damon*, 17 Pick. 284; Hutchinson on Carriers, sect. 447.

III. There was a delivery of the salt irrespective of the question of the contract, upon its arrival at defendant's depot at Lexington. This was the end of its route, the precise point named in the contract of the shipment, and the arrival of the salt there terminated the liability of defendant.—Hutchinson on Carriers, sect. 367.

IV. The case was tried upon an erroneous theory as to the measure of damages. The value was at the place and time of shipment. The *evidence* was at Lexington, *subsequent* to date of shipment.—*O'Brien* v. *Kinney*, 74 Mo. 125; *Ibid.* 546; *Squire* v. *R. R.*, 98 Mo. 239; Lawson on Contracts of Carriers, sect. 20.

V. There was a verdict upon two separate and distinct causes of action, and the attention of the court specifically directed thereto, by the motion in arrest of judgment—*Hickman* v. *Boyd*, 1 Mo. 495; *Mooney* v. *Kennett*, 19

Mo. 551; *Pitts* v. *Forgate*, 41 Mo. 405; *Owens* v. *R. R. Co.*, 58 Mo. 394; *Sturgeon* v. *St. L., K. C. & N. Ry. Co.*, 65 Mo. 571.

GRAVES & AULL, for the respondents.

I. The contract could only be satisfied by delivering *at Lexington*, and not at a point north of Lexington across the Missouri river.—*Gromly Mach. Co.* v. *R. R.*, 70 Mo. 672.

II. It was not the duty of plaintiffs to pay overcharges and sue to recover thereafterwards. The authorities cited by defendant to sustain this point are wholly irrelevant.

III. It does not avail defendant to aver or to prove that its line of railroad terminated on the north bank of the river opposite Lexington, and that it had no road running into Lexington. The bill of lading expressly required the delivery of the goods *in Lexington.*

IV. The damages were *not* fixed by the contract at the value of the salt at the place and time of shipment. The clause relied on refers to injury *during* transportation and has no reference to a loss occasioned by delay in transportation or a refusal to deliver the goods to the owner upon their arrival. The contract does not provide for the measure of damages, and therefore the Lexington market is the one to be considered.—*Pruitt* v. *Han. & St. Jo. R. R.*, 62 Mo. 529; *Harrison* v. *Mo. Pac. Ry. Co.*, 74 Mo. 365; *Sturgeon* v. *R. R. Co.*, 65 Mo. 570; *Illinois Central R. R.* v. *Owens*, 53 Ill. 391.

V. The objection as to the general verdict is not sustained by the authorities cited. They all had their origin in the circuit court where pleadings are required to be technical and formal, and where each cause of action must be separately stated in the petition. This case originated in a justice's court where no formal pleadings are required.—Sects. 2850, 2851 and 3011, Rev. Stat.; *Talbott* v. *Jones*, 5 Mo. 217. Inasmuch as this appeal is frivolous, respondent asks for an affirmance of the judgment and ten per cent. damages.

Opinion by PHILIPS, P. J.

We will consider the objections to the proceedings of the circuit court in the order insisted on by appellant in its brief.

1. As to the first shipment, it is insisted by defendant that its liability ceased on the arrival of the salt at the station north of Lexington. This presents the inquiry, whether the delivery of the goods at said station was a compliance with the terms of the written bill of lading? The stipulation is, that the defendant shall transport the salt by the Wabash, St. Louis & P. R. R. Co., and its connecting forwarding lines, "until the said goods or merchandise shall have reached the point named in this contract." The point named, under the head of "Destination," is "E. G. Loomis & Co., Lexington, Mo." Looking at the language of this contract alone, I am unable to perceive how defendant could perform its contract by delivering the goods at a point short of Lexington. The point where it actually delivered the goods was a mile from Lexington, situated in another county, with the Missouri river intervening, unbridged, and accessible only by ferry boat. The depot was not even at Lexington. It could hardly be maintained that defendant had kept its undertaking if its line of road had terminated fifty miles instead of one mile from Lexington.

We may concede the proposition that a common carrier is not ordinarily bound to carry freight beyond the terminus of its line of transportation; but the law is equally well settled that it may, by contract, extend its undertaking to deliver beyond such terminus. The liability in such cases has generally turned on the question, whether such contract was executed on the part of the carrier corporation by one having authority therefor?

In *Grover and Baker Sewing Machine Co.* (70 Mo. 672), the defendant company was discharged from liability, on the ground that the person executing the contract on behalf of the company was only a special agent, who, as shown by the evidence, had no authority in fact from his imputed principal to make such contract; and there was no evidence of a holding out to the public of such

agent as having such authority. But the decision very clearly holds, that had the contract of affreightment been made by a general agent of the company, it would have been binding on it to deliver the goods at a point beyond the line of its road.

The latter condition is precisely this case. The bill of lading is signed in behalf of the defendant by "C. L. Rising, General Agent." As this contract was admitted in evidence without objection, we are authorized to assume that it was executed by a general agent of defendant, having authority to make such a contract. If so it bound it to the letter and spirit of the undertaking, in the absence of any competent evidence showing that the terms employed had any other significance than their ordinary import.

2. As to the second shipment, the defendant contends that it was the duty of the plaintiff to have paid the overcharge under protest, and then sued the defendant to recover back the excess. The vice in this proposition lies in the confounding by counsel of a privilege or right accorded by law to the consignee, and the duty or obligation resting absolutely on him to exercise the privilege. The authority cited (Hutch. on Car. 447) only says the consignee, if he desires to do so, *may* submit to the wrong, tender the overcharge under protest, and if the money be accepted, he may afterwards recover back the amount wrongfully exacted. But suppose he has not the money to tender, or does not see fit to submit to the wrong, what principle of law or ethics would permit the wrong-doer, when sued for breach of his contract, to plead his own wrong or fraud as a defence, to which the complainant refused to submit?

There are some propositions so opposed to the innate sense of right and common fairness as to require neither argument nor authority to confront them. Their refutation lies in their manifest injustice.

3. The third proposition of defendant is, that when the salt arrived at the depot at Lexington, this was a delivery, without more, and terminated defendant's liability. We

are again referred to Hutch. on Car. 367, in support. Of course every enunciation of a legal principle or proposition, must be considered relatively. What the author is discussing in the connection cited is the much controverted question as to whether the undertaking of a railroad carrier is fully met by the safe transport of the goods to the designated railroad station, or whether it does not extend further? Some courts hold that it is the duty of the consignee to be on the look-out for the arrival of the assignment, and to be at the station promptly to receive the goods, while others maintain that the duty rests upon the carrier, in case the consignee is not present to receive the goods, to safely store them and notify him of their arrival, and allow him a reasonable opportunity to remove them.

It is not necessary in this case that we should undertake to determine which of these rules is the better. It is not the issue presented in this record.

As to the first shipment, plaintiff contends that the goods were not delivered at the designated destination, and as to the second consignment, that while defendant did carry them to the designated point, after the arrival it imposed conditions on their delivery to the consignee in violation of its contract.

4. It is next insisted that the circuit court tried the case on the wrong theory as to the measure of damages. Defendant now contends, that by the express terms of the contract, the damage in question should have been estimated on a basis of the value of the salt at Chicago, the point from which it was shipped; whereas, the court directed the jury to estimate it according to its value at Lexington, the point to which it was shipped.

We are relieved from the discussion of the proper construction of the contract in this particular, because the instruction asked by the defendant and given by the court, recognized that Lexington was the correct point. It is settled by the repeated decisions of the Supreme Court of this state that the appellant cannot be heard to allege that as error of the trial court, which he invited

the court to commit: "It hardly lies in the mouth of the defendant to object here to a technical blunder which he waived on the trial by adopting the error."— *Davis* v. *Brown*, 62 Mo. 313; *Noble* v. *Blount*, 77 Mo. 235; *Holmes* v. *Braidwood*, Sup. Ct. Mo., not yet reported; *Walker* v. *Owen*, 79 Mo. 568.

5. The final objection made here by appellant is, that the statement filed in the justice's court contains two independent causes of action, on which there should have been a separate finding by the jury; whereas the jury returned a general verdict.

We are not aware that this question has been passed upon by the higher courts of this state, and the determination of it is not free from difficulty. At common law, separate causes of action could not thus be united. The practice is authorized by our statute. Under the Practice Act (Rev. Stat. sect. 3512) the plaintiff is authorized to unite in the same petition several causes of action; "but the causes of action so united must be separately stated, with the relief sought for each cause of action, in such manner as that they may be intelligibly distinguished." This provision, however, applies only to practice in the circuit or other courts of like jurisdiction. Under this statute it has been uniformly held that where separate causes are thus united, there must be a separate finding by the jury on each count. A general verdict would be error, inviting a motion in arrest of judgment.

It will be seen, however, that all the cases, in which this doctrine is announced, arose in the circuit court. They do not, therefore, necessarily determine the question at bar.

Our justices' courts have no jurisdiction, except as conferred by statute. They are simply creatures of the statute; and do not proceed according to common law methods.—*State* v. *Metzger*, 26 Mo. 65; *Hausberger* **v.** *P. R. R.*, 43 Mo. 196.

Section 2850, Revised Statutes, concerning justices' courts declares: "The plaintiff may unite in his suit as many causes of action as he may have."

It is worthy of observation that there is a marked difference between this and section 3512. While section 2850 authorizes the plaintiff, suing in a justice's court, to unite in his suit as many causes as he may have, it does not follow up the permission, as in section 3512, with the requirement that the several causes shall be separately stated, with the relief sought for each cause. There must be some significance in this difference.

The common law rule was that the jury must make a finding on all the issues, and if they did not the judgment would be arrested. As where in an action of *indebitatus assumpsit* there was a plea of the general issue, or *nil debit*, and further pleas alleging fraud in the consideration of the note sued on, a general finding for the plaintiff was error.—*Hickman* v. *Byrd*, 1 Mo. 495. So in an action for assault and battery, where the answer tendered the general issue, and a justification of *son assault demesne*, a general verdict was bad, because there was no finding on the issue of justification.—*Fenwick* v. *Logan*, 1 Mo. 401. But the Missouri court of appeals, in *Flesh* v. *Christopher* (11 Mo. App. 463), held in effect, that this rule of common law does not now apply to proceedings in justices' courts. The plaintiff sued for a balance alleged to be due on a builder's contract, and the contractee pleaded, what in the circuit court would be denominated a counter-claim, and in a justice's court a set-off. There was a general verdict for the plaintiff, without any special finding as to the counter-claim. It was held not to be error.

Sections 2851, 2852, 2855, 2856, and 3011 especially, Revised Statutes, as well as the act generally respecting the mode of procedure in justices' courts, indicate that it was the purpose of the legislature to simplify the proceedings as far as practicable, and to divest them of those technicalities which are deemed essentials in the graver issues involved in the courts of higher jurisdiction; so the unlearned in the law might manage causes there, and reach a judgment with little form.

I am satisfied that a general verdict on all the issues

involved in this case would not have been bad in the justice's court. The only inquiry, therefore, is, does a different rule apply in the trial and judgment in the circuit court on appeal? Section 3052, Revised Statutes, directs that the circuit court shall proceed "to hear, try, and determine the same anew," etc.

Now it does seem to me that, unless it can be maintained that when the cause reaches the circuit court on appeal it loses its character as a case of the justice's jurisdiction so as to bring it under the operation of section 3512, defendant's position is not tenable.

In *Soutier* v. *Kellerman* (18 Mo. 509), decided shortly after the adoption of the code of practice of 1849, Gamble, J., held that the new code does not apply to the trial of a cause appealed from a justice's court. There has been no such enlargement of the rule by statute to change this principle as applied to the question at bar. In the revision of 1879, section 2984, it is provided: "That the proceedings upon the trial of suits before justices of the peace, with respect to the examination of witnesses, the submission of evidence and argument, and the order and conduct of the trial, when no other provision is made by law, shall be governed by the usages and practice in the circuit court, so far as the same may be applicable."

But it is obvious that this does not touch the matter of the verdict, or a general verdict on all the issues.

The pleadings are not reformed on appeal. And as on appeal it is a trial *de novo*, the same character of judgment which is good in the justice's court must logically be good on appeal.

It follows, the other judges concurring, that the judgment of the circuit court must be affirmed