# MIRRIELEES v. WABASH RAILROAD COMPANY, Appellant.

## Division One, June 12, 1901.

1. **Negligence: FRAUD: FORGERY: TRAVELLING ON ANOTHER'S MILEAGE-BOOK: TRESPASSER.** Plaintiff while travelling in a caboose car was injured by a derailment of the car caused by the falling of a brake-beam on the next forward car. Defendant denied plaintiff's right to recover on the ground that he had been guilty of fraud and forgery, consisting in the presentation of a non-negotiable mileage-book issued to another, and in writing, in a handwriting similar to his, the name of such other on the part detached by the conductor. *Held,* that there was no forgery in the case because the person to whom the mileage-book was issued authorized the plaintiff to sign his name thereon; *and* the fraud was eliminated from the case by the dismissal of his first count which was predicated upon the relation of passenger and carrier, and by the submission of the case to the jury upon instructions asked by both parties which declared that plaintiff was a trespasser.

2. ———: **TRESPASSER: ORDINARY CARE: WANTONNESS: THEORY AT TRIAL.** Where both parties have tried the case in the circuit court on the theory that plaintiff was a trespasser on defendant's car, and that as such defendant owed him ordinary care to prevent the injuries to him after it knew of his peril, the appellate court will not consider whether a carrier's liability to a trespasser, in case of accident, is limited to willful or wanton injuries or extends to injuries caused by a want of ordinary care, for the case must be disposed of in the appellate court on the same theory upon which it was tried below.

3. ———: ———: ———: ———: ———: **DEMURRER: WAIVER.** Where the railroad offered a demurrer to the evidence, and that being overruled, it asked an instruction, which the court gave, directing that the defendant carrier was liable to ordinary care toward plaintiff since he was a trespasser on its train, it waived

the right to invoke such demurrer as raising the point that the carrier's liability is limited to willful or wanton injury.

4. ———: ALLEGATIONS: INSTRUCTIONS. In a suit by a trespasser for injuries received by the derailment of a caboose caused by the falling of a brake-beam from the next forward car, where the only negligence charged is the failure to use ordinary care to stop the train or to detach the caboose from the train after the danger was known and the peril was imminent, instructions which proceed on the theory that some claim is set up because defendant had not furnished safe machinery, or had not properly inspected the car, or that plaintiff jumped from the car because the conductor ordered him to do so, and was thereby caught under the falling car, should all be refused, because foreign to the issues.

5. ———: ———: SUPPORTED BY EVIDENCE: MATTER FOR JURY. And where the allegations of negligence are that the carrier failed to use ordinary care to stop the train or to detach from the train the caboose in which plaintiff trespasser was riding, after the danger was known and the peril imminent, and there is a conflict of evidence as to whether the caboose could have been detached in time to have avoided the injury, no attempt being made by the trainmen to do so, although they were requested by plaintiff and others, to try, the appellate court will not review the finding of fact, the verdict being supported by substantial evidence.

6. ———: DANGER ANTICIPATED: STOPPING TRAIN: SIGNALS. The train could have been stopped in a hundred yards and the conductor, having discovered that the break-beam on a forward car had fallen, anticipated an accident when the caboose reached the switch near a town, which was yet more than four hundred yards ahead, and thereupon gave either a stop signal or an emergency signal to the engineer. *Held,* that if he did not give the emergency signal he was guilty of negligence, and if he did and the engineer did not obey it, he was guilty of negligence. In either case the carrier did not exercise ordinary care to prevent the accident after it knew of the danger and that the peril was imminent.

7. Practice: SURPRISE: CONTINUANCE: COSTS. In a case where defendant is entitled to a continuance on filing an affidavit of surprise, it is improper to impose on him, as a price of the continuance, that he shall pay the costs.

8. ———: ———: AMENDING PETITION. Where the petition charged negligence in general terms, and after all the evidence has been

admitted without any objection that it did not state a cause of action, defendant is not entitled to a continuance upon filing an affidavit of surprise, on the ground that the court permitted plaintiff to amend his petition so as to limit the issues to specific acts of negligence.

9. ———: NEW TRIAL: SUPPLEMENTAL MOTION AFTER FOUR DAYS. Where ·the motion for a new trial was filed within four days, and afterwards during the same term a supplemental motion was filed asking leave to amend the former motion on the ground of newly-discovered evidence, the application being supported by affidavits, the supplemental motion, not having been made within four days, should have been denied.

10. Negligence: DAMAGES: MEDICAL SERVICES. Where a physician, who had treated plaintiff, testified that his services were reasonably worth two hundred dollars, it is not error to instruct the jury, in estimating plaintiff's damages to take into consideration his necessary expenses for medical attention in endeavoring to be cured.

11. ———: STIPULATION IN TICKET: TRESPASSER: INCONSISTENT DEFENSES. The defense that the carrier is released from liability because plaintiff was riding on a mileage-book which contained an express release from liability for accidents received while travelling on freight trains, is inconsistent with the theory that plaintiff was a trespasser, and hence, is not available to defendant if it has requested and obtained an instruction which told the jury that plaintiff was a trespasser.

Appeal from Hannibal Court of Common Pleas.—*Hon. Reuben F. Roy,* Judge.

AFFIRMED.

*Geo. S. Grover* for appellant; *A. H. Waller* and *Geo. A. Mahan* of counsel.

(1)    The demurrer to the evidence should have been sustained. Fetter on Carriers of Passengers, secs. 222 and 223; Ray on Passenger Carriers, p. 16; 2 Wood on Railroads, (Ed. 1894), sec. 298, p. 1205; 3 Elliott on Railroads, sec.

1255, p. 1961; Thompson on Carriers of Passengers, sec. 3, p. 43; Railroad v. Thompson, Admr., 107 Ind. 442; Planz v. Railroad, 157 Mass. 377; Railroad v. Johnson, 3 Okl. 41; Railroad v. Beggs, 85 Ills. 80; Railroad v. Brooks, 81 Ills. 245; Railroad v. Michie, 83 Ills. 427; Brown v. Railroad, 64 Mo. 536; Lillis v. Railroad, 64 Mo. 464; Railroad v. Nichols, 8 Kansas, 505; Way v. Railroad, 64 Iowa, 48; Railroad v. Moore, 49 Texas, 31; Berry v. Railroad, 124 Mo. 223; Condram v. Railroad, 67 Fed. Rep. 522; McVeety v. Railroad, 45 Minn. 268; Vobostelli v. Railroad, 33 Fed. Rep. 796; Dalton's Admr. v. Railroad (Ky.), 56 S. W. 657; Handley v. Railroad (Kan.), 7 Am. Neg. Reports 46; Walker v. Railroad, 15 Mo. App. 333; Earl v. Railroad (Iowa), 6 Am. Neg. Reports 274; Padgitt v. Moll, 60 S. W. 121. (2) The court should have directed a verdict for the defendant at the close of the whole case. Authorities cited, supra; Yarnall v. Railroad, 113 Mo. 580; (3) The arbitrary ruling of the court upon the question of amendment was an abuse of judicial discretion. Sec. 655, R. S. 1899; Archer v. Ins. Co., 43 Mo. 434. (4) The hypothetical questions asked by the plaintiff were improper and prejudicial. Ross v. Railroad, 112 Mo. 45; Smith v. Railroad, 119 Mo. 256; Muldowney v. Railroad, 39 Iowa, 615; Williams v. Brown, 20 Oh. St. 547; Rogers on Expert Testimony (2 Ed.), sec. 27. (5) The court gave improper instructions at the plaintiff's request. Authorities cited, supra. (6) The court refused proper instructions asked by defendant. Authorities cited, supra; Yarnall v. Railroad, 113 Mo. 580. (7) The defendant should have been granted a new trial on account of the perjury committed by the plaintiff. Sec. 800, R. S. 1899; Dwyer v. Railroad, 66 Mo. App. 335. (8) The contract as expressed in the mileage-book is valid, and the violation of it, as shown by the evidence, precluded a recovery here. Authorities cited, supra; Express

Cases, 117 U. S. 1; News Co. v. Railroad, 151 Mo. 373; Quimby v. Railroad, 150 Mass. 365; Hosmer v. Railroad, 156 Mass. 506; Mosher v. Railroad, 127 U. S. 390; Boylan v. Railroad, 132 U. S. 146; Railroad v. Reeder, 170 U. S. 530; Railroad v. Voigt, 176 U. S. 498.

*F. L. Schofield* and *Thos. Worthington* for respondent.

(1) The court properly overruled the demurrer to the evidence and the motion directing a verdict for defendant, at the close of all the evidence. The question of negligence, that is to say, the question whether the defendant's servants exercised that decree of care which the law imposed upon them, at the time, and under the circumstances in evidence, was a question of fact for the jury under appropriate instructions, and there was abundance of evidence to carry the question to the jury. Karle v. Railroad, 55 Mo. 484; Barker v. Railroad, 98 Mo. 50; Sinclair v. Railroad, 133 Mo. 283. (2) The action of the court in permitting plaintiff to dismiss the first count and amend the second count of his petition was neither arbitrary nor erroneous. (a) Plaintiff had a right to declare his cause of action in separate counts; one upon the theory that he was a passenger, the other on the theory that he was not. He could not have been compelled to elect, and if he had chosen to go to the jury on both counts, a general verdict would have supported the judgment. Brownell v. Railroad, 47 Mo. 239; Lincoln v. Railroad, 75 Mo. 27; Owens v. Railroad, 58 Mo. 394; Taylor v. Springfield, 61 Mo. App. 263; Straub v. Eddy, 47 Mo. App. 189; Lancaster v. Ins. Co., 92 Mo. 460; McKee v. Calvert, 80 Mo. 348; Brinkman v. Hunter, 73 Mo. 178. (b) The matter introduced by the amendment was not, as appellant complains, "an entirely new allegation," and one "which, as a matter of course, the defendant was not pre-

pared to meet." Goodwin v. Railroad, 75 Mo. 73; Schneider v. Railroad, 75 Mo. 295; Mack v. Railroad, 77 Mo. 232; Shaw v. Railroad, 104 Mo. 648; Sullivan v. Railroad, 97 Mo. 113; Robertson v. Railroad, 84 Mo. 119; Hill v. Railroad, 121 Mo. 477. And it has been repeatedly held that such general allegation of negligence in running, operating and managing defendant's cars, is sufficient to authorize proof of a neglect to use the means at hand to prevent the injury after discovery of plaintiff's exposed condition. Hilz v. Railroad, 101 Mo. 56; Hanlan v. Railroad, 104 Mo. 391; LeMay v. Railroad, 105 Mo. 370; Dickson v. Railroad, 104 Mo. 502.

(c) The court might properly have refused defendant a continuance upon any terms whatever. There could have been no such thing as legal surprise to the defendant. R. S. 1889, sec. 657; Timber Co. v. Cooperage Co., 112 Mo. 383; Carr v. Moss, 87 Mo. 447; Harlan v. Moore, 132 Mo. 488; Ins. Co. v. Smith, 117 Mo. 261; Kerr v. Bell, 44 Mo. 124; Bennett v. McCanse, 65 Mo. 194; Wellman v. Dismukes, 42 Mo. 101; Callaghan v. McMahan, 33 Mo. 111; Sinclair v. Railroad, 70 Mo. App. 597; Collins v. Glass, 46 Mo. App. 297.

(3) The instructions given on plaintiff's motion announced correct propositions of law and were abundantly supported by the evidence in the cause. (a) To abstain from wanton or willful injury is neither the moral nor legal measure of duty even to a trespasser after once seeing and knowing the imminence of the peril to which he is exposed. Jewett v. Railroad, 50 Mo. App. 547; Warren v. Railroad, 59 Mo. App. 367; Wallace v. Railroad, 74 Mo. 597; Pryor v. Railroad, 69 Mo. 218. (b) But the very doctrine, namely, the doctrine requiring ordinary care in avoiding the injury after the knowledge of plaintiff's exposure and danger, which learned counsel are here so eloquently arraigning, was declared by the court in the first and second instructions given at defendant's own

request. The defendant can not now complain of error committed by the court in its instructions for plaintiff, where the same theory of the case and the same error are contained in the instructions given on its own motion. Holmes v. Braidwood, 82 Mo. 610; McGonigle v. Daugherty, 71 Mo. 259; Crutchfield v. Railroad, 64 Mo. 255; Davis v. Brown, 67 Mo. 313. (4) There was no error in refusing the refused instructions offered by defendant. (a) In so far as any of said instructions may have announced correct propositions of law under the second count of plaintiff's petition, if any of them do announce correct propositions of law, they were well and sufficiently covered by the instructions given and, therefore, were unnecessary. Payne v. Railroad, 112 Mo. 6; State ex rel. v. Gage, 52 Mo. App. 464; Garrison v. Graybill, 52 Mo. App. 580; Beck v. Haas, 111 Mo. 270. (b) The refused instructions, taken as a whole, were misleading and confusing; jumbling matters applicable alone to the first count of the petition, which was not before the jury, with matters pertaining to the second count. And, besides, they were inconsistent with the two instructions given on defendant's own motion. (5) There was no error in the refusal of the court to grant defendant a new trial, "on account of the perjury committed by plaintiff." First, because there was no perjury committed; the ex parte affidavits and unsworn statement filed in the cause by defendant are insufficient to convict plaintiff of this very serious charge, even if this court could, in this proceeding hear and determine the question on the proffered evidence. In the next place, because the matters set forth in defendant's "supplemental motion for a new trial," on the ground of alleged newly-discovered evidence, were not such as to have warranted the court in entertaining the motion, even if said matter had been set out in the original motion for a new trial and filed in time. And lastly, because the "supplemental motion for a new trial"

was filed out of time and could not have been considered by the lower court. Newly-discovered evidence must be material. State v. Locke, 26 Mo. 603; Shaw v. Beach, 58 Mo. 107; Culbertson v. Hill, 87 Mo. 556. The third ground mentioned in the motion merely offered evidence, which, at most, would have been cumulative. This is insufficient. Dolman v. Munson, 90 Mo. 85; Culbertson v. Hill, 87 Mo. 556; State v. Griffin, 87 Mo. 608. (6) This "supplemental motion for a new trial," was filed seventeen days after the day of the trial, and the last "proof" in support of it, was filed just three months after the trial. It was, therefore, properly overruled and can not here be considered. R. S. 1899, sec. 803; St. Joseph v. Robinson, 125 Mo. 1; Maloney v. Railroad, 122 Mo. 114; State v. Dusenbery, 112 Mo. 295; State v. Brooks, 92 Mo. 542; Bank v. Bennett, 138 Mo. 494; Bank v. Porter, 148 Mo. 176; reversing s. c., 65 Mo. App. 448. (7) Railroad companies may not contract with their passengers *ad libitum* against liability arising from any and all sorts of negligence by their operatives in running and managing their trains. Public policy will not tolerate such a rule, and more especially in respect of the transportation of passengers. Tibby v. Railroad, 82 Mo. 292; Carroll v. Railroad, 88 Mo. 239; Jones v. Railroad, 125 Mo. 666; Ryan v. Railroad, 32 Mo. App. 228.

MARSHALL, J.—This is an action for damages sustained by the plaintiff on July 29, 1895, while riding on defendant's freight train, near Clifton Hill. The original petition was in two counts. The first count was predicated upon the relation of passenger and carrier, while the second count simply stated that at the town of Huntsville the plaintiff entered into and upon defendant's caboose car attached to one of defendant's freight trains, and which was "provided, intended and used for the transportation of passengers from Huntsville

to Clifton Hill, for the purpose of being transported thereon from said town of Huntsville to said town of Clifton Hill," and that his presence thereon was well known to defendant's conductor and other servants from the time of his entrance thereon until the accident.

The negligence as charged in the second count in the original petition, and as amended upon the trial at the close of the whole evidence, is as follows:

"That while said train of cars was running upon its said trip, and before its arrival at the station at said town of Clifton Hill, a certain brake or beam, attached to and forming a part of the next car in front of said caboose car, became and was detached from its proper place, and fell down and was being dragged along and upon the rails and track of defendant's railroad, then and there constituting and producing a dangerous obstruction to said train, and especially to said caboose car, and rendering the same liable to be thrown from the track and injuring the plaintiff. That by means and by reason of the said obstruction so constituted and produced, the plaintiff became and was exposed to imminent and great peril and danger of being injured. That the aforesaid condition of the said brake or beam and the said obstruction produced thereby, as well as the dangerous character thereof, and the plaintiff's exposure to such danger and his liability to being injured thereby, was then and there known to the said conductor and other agents and servants of defendant then and there in charge of and operating said train and caboose car, and were so well known in time to have prevented and avoided injury to plaintiff, and by the exercise of reasonable and ordinary care and diligence, and the use of the means then at hand, said conductor and other agents and servants of defendant could and might have prevented and avoided the ensuing injury to plaintiff, as it was then and there their duty to do. [Amended by leave of court at

close of testimony on February 26, 1898, by inserting at this place the following words: "In this, to-wit, that said conductor and servants in charge of said train had time and opportunity to stop said train and avoid injuring plaintiff, and then and there had time and opportunity and means at hand to detach said car, and so avoid said injury to plaintiff."] Yet, nevertheless, the said conductor and other agents and servants of defendant, operating and in charge of said train neglected and disregarded their duty to the plaintiff in that behalf, by means and by reason whereof plaintiff became and was injured in manner following: That said caboose car was, by means and by reason of said brake or beam so dragging and forming said obstruction, derailed and thrown from the track, and with great force and momentum turned and fell on its side. That immediately previous thereto the conductor in charge of said caboose and train shouted to and ordered and commanded the plaintiff to jump. That in obedience to said order and command, and in attempting to escape from the danger to which he was then exposed, and which was then imminent, and as the apparently only means of escaping said danger, did jump or attempt to jump from said caboose car. In so doing, or attempting to do so, the plaintiff was thrown with great force and violence to and upon the ground there and under said caboose car; and thereby" greatly injured, etc.

The answer to the first and second counts is substantially the same, and denies the relation of passenger and carrier; sets up that the plaintiff was riding upon a certain mileage ticket issued by defendant to one H. G. Milligan, which provided that it was non-transferable, that Milligan must sign his name thereon, in the presence of the conductor, and that when used on freight trains the defendant was absolved from liability for injury to the person or his property, and that plaintiff fraudulently induced the conductor to believe he was Milligan, and

simulated Milligan's signature, and never paid any fare, in consequence of which fraud the relation of passenger and carrier never existed or was created, and that by the terms of which ticket, because used on a freight train, the defendant was released from liability.

The reply admits the charge as to using Milligan's ticket; and sets up a custom among travelling salesmen to use each other's tickets, which was recognized by the defendant; and further avers that the conductor on the freight train knew both Milligan and himself; and further, that he entered the caboose car with the intention and purpose of becoming a bona fide passenger thereon, and tendered Milligan's mileage ticket, with Milligan's consent, which was accepted by the conductor, and denied all fraudulent intent.

The defendant moved to require the plaintiff to elect upon which count of the petition he would stand, and also moved to strike out all that part of the reply, relating to the custom of traveling salesmen to use each other's mileage tickets. The court overruled both motions, and defendant saved proper exceptions. At the close of the whole case the plaintiff dismissed as to the first count, and by leave of court amended his second count by adding the words above indicated. The defendant filed an affidavit of surprise and asked a continuance. The court refused to continue the case unless the defendant would pay all the accrued costs, which the defendant refused to do.

There is no conflict in the evidence as to the following facts: first, that plaintiff got into the caboose alluded to on the freight train at Huntsville to go to Clifton Hill; second, that he tendered to the conductor a mileage ticket, conditioned as set up in the answer; that it had been issued to Milligan, and that he signed Milligan's name; third, that the car had been properly inspected and found safe that day; that when going up the grade just before reaching Clifton Hill, the brake-

beam on the car in front of the caboose fell down on the track, and this condition was known to the conductor and brakeman for at least four hundred feet before the train reached the place where the accident occurred; fourth, that the train was running very slowly—not as fast as a man could walk; fifth, that the conductor anticipated that an accident would be caused, which would derail the caboose, when the switch was reached, which switch was four hundred and fourteen feet from the place where the accident occurred; sixth, that the conductor gave a stop signal to the engineer, but not an emergency signal, before the accident occurred, and that the train could have been stopped in fifty or seventy-five feet, and that after the brake was discovered to be down on the track the train ran at least four hundred feet before the accident occurred; seventh, that the conductor jumped off the train himself before the accident occurred, and advised the passengers to do likewise, and they all did so safely, except the plaintiff, who was lame, his right leg being three and three-quarters inches shorter than his left, and he and a passenger named Sharlack went to the front platform intending to jump; Sharlack went to one side and jumped off, plaintiff went to the other and could not jump off on that side because there was a hill on that side, and by the time he turned around to jump off the other side of the car the accident occurred, the caboose was derailed and turned over, and he was seriously injured.

The plaintiff, and perhaps other persons, requested the conductor to cut the caboose loose from the train by taking out the coupling pin. The conductor made no attempt to do so, and instead advised the persons in the caboose to jump. There was a conflict in the evidence as to whether it was possible to cut the caboose loose from the train, on the up grade, when the couplings were taut, or whether a slack could be created by

Vol 163 mo—31

putting on the brakes on the caboose and then suddenly releasing them, thereby making it possible to remove the coupling pin.

At the request of the plaintiff the court instructed the jury as follows:

"1.   The court instructs the jury that if they shall believe from the evidence in this case that while the plaintiff was being conveyed in a caboose car on one of defendant's trains a brake-beam on the car next in front of the said caboose car became detached and fell down and was being dragged on the rails in such a manner as to become an obstruction to, and dangerous to those riding in said caboose car; and that said obstruction and danger and the plaintiff's exposure thereto were known to the conductor or other servants of defendant in charge of said train; and that after the discovery of said danger the said conductor or other servants of defendant in charge of said train had sufficient time and opportunity to stop said train, or that they had sufficient time and opportunity by employing the means then at hand to detach said caboose from said train, and that they might have so stopped said train or detached said caboose car by the exercise of ordinary care and the employment of the means then at hand, consistent with their own safety and that of their engine and train, and so avoided injury to the plaintiff, yet failed so to do; and that thereafter said caboose car was thrown from the track by said obstruction and plaintiff became and was injured thereby; then the jury are instructed that plaintiff is entitled to recover in this case, even although the jury should further believe from the evidence that the plaintiff was at the time travelling on a nontransferable mileage ticket issued to H. G. Milligan, and had signed the name of H. G. Milligan to the coupon detached from said mileage ticket, intending to deceive said conductor into the belief that plaintiff was himself said H. G. Milligan, and

even although they may further believe from the evidence that the conductor was in fact so deceived into accepting said mileage ticket in payment of plaintiff's fare.

"2. The court instructs the jury that the term 'ordinary care' as used in these instructions, means such care as would ordinarily be used by prudent persons in the performance of a like service under similar circumstances.

"3. If the jury find for the plaintiff, in estimating and determining the measure of his damages they should take into consideration, in connection with all the facts and circumstances in evidence, the bodily pain and suffering and mental anguish, if any, endured by him and resulting from the injuries received; the character and extent of his injuries, and whether they are permanent in their nature; the extent, if any, to which he has been prevented and disabled by reason of such injuries from working and earning a livelihood for himself; his necessary expenses for medical attention in endeavoring to be cured; and may find for him such sum as in the judgment of the jury, under all the evidence in the case, will compensate him for the injuries received, not however, exceeding the sum of twenty thousand dollars."

The court gave the following instructions at the request of the defendant:

"1. The court instructs the jury that under the evidence in this case, before they can find for the plaintiff, they must find and believe from the evidence in the cause, that the officers and agents of defendant, then and there in charge of defendant's train, had time and opportunity to stop said train and avoid the injury, or had time and opportunity and means to detach the said caboose car from the train after discovering the danger by reason of the falling of the brake-beam, with safety to said officers and servants and property of defendant, and that after discovering the danger, the officers and servants

in management of said train failed to use ordinary care in stopping said train or in disconnecting said car from the train, and unless you so find and believe from the evidence in the cause, your verdict must be for the defendant, and in passing upon the question as to whether or not the train could have been stopped or the car detached after discovering the danger by reason of the falling of the brake-beam, you will take into consideration all the facts and circumstances given in evidence at the time of the accident; and you are further instructed that the burden of proving that the train could have been stopped or the car detached, is upon the plaintiff, and unless he has so proven by the preponderance of the evidence in the cause, your verdict must be for the defendant.

"2. The court instructs the jury that the plaintiff has dismissed the first count in his petition in which he claimed to be a passenger. Your attention, therefore, is directed to the second count in the petition, in which plaintiff seeks to recover, not as a passenger, but as a trespasser; therefore, the court instructs the jury that the defendant did not owe the plaintiff any obligation as a passenger, but only as a trespasser, therefore, was only required to use ordinary care."

The defendant asked sixteen other instructions, but in the view we take of this case it is not necessary to set them out. There was a verdict for the plaintiff for five thousand dollars. Within four days thereafter, the defendant filed a motion for new trial. Some seventeen days after the trial, and during the same term, the defendant filed a supplemental motion for new trial, alleging newly-discovered evidence, and then and thereafter supported it with affidavits, to which the plaintiff filed counter affidavits. The court overruled the motions for new trial, and the defendant appealed.

## I.

The bulk of defendant's contention here is that the plaintiff was guilty of fraud, forgery and perjury, which cuts off his right to recover at all.   The fraud and forgery consist of his presenting the mileage ticket issued to Milligan, and writing his name on the part detached by the conductor, in a handwriting alleged to be similar to Milligan's, and the perjury consists in statements made by him as to the wages he received before and after the accident.   As to the forgery, it is enough to say that Milligan authorized plaintiff to sign his name.   As to the fraud, it is only necessary to say that the plaintiff dismissed his first count, and the court submitted the case to the jury upon instructions asked by both plaintiff and defendant which declared that the plaintiff was a trespasser.   Thus, the fraud was eliminated from the case, and the plaintiff was left, before the jury, in exactly the same position as if no fraud had been perpetrated, but as if he had been on the train without the consent of the defendant.   In this way, too, the plaintiff was expressly denied the right to claim that the relation of passenger and carrier ever existed, and also was denied the right to the care and protection due a passenger.   The plaintiff predicated his right to recover upon the theory that, although a trespasser, the defendant owed him the duty not to injure him if by the exercise of ordinary care it could avoid it after his danger became known to the defendant, and the defendant had the court expressly declare him to be a trespasser and not a passenger, and that it only owed him the duty of ordinary care not to injure him after it knew of his peril, and further, placed the burden of proof upon the plaintiff to show that it neglected this obligation. This court is, therefore, relieved of the necessity of following the learned argument of defendant's counsel upon the question of the liability of a railroad company in case of accident, to a

person who rides upon a non-transferable ticket issued to another.

We are also relieved of the necessity of considering whether a carrier's liability to a trespasser in case of accident is limited to willful or wanton injuries or extends to injuries caused by want of ordinary care, for the reason that both the parties hereto tried this case in the circuit court upon the theory that the defendant was bound to exercise ordinary care to prevent injury to a trespasser after it knew of his peril, and having tried the case upon this theory below, it must be tried upon the same theory here. [Bank v. Armstrong, 62 Mo. 59; Harris v. Hays, 53 Mo. 90; Walker v. Owen, 79 Mo. 563; Tomlinson v. Ellison, 104 Mo. 105; Hart v. Leete, 104 Mo. Mo. 315; Minton v. Steele, 125 Mo. 181; Bowlin v. Creel, 63 Mo. App. 229; Ellis v. Harrison, 104 Mo. 270; Olfermann v. Railroad, 125 Mo. 408; Railroad v. Maffitt, 94 Mo. 56; Harper v. Morse, 114 Mo. 317; Bettes v. Magoon, 85 Mo. 580; Mastin Bank v. Hammerslough, 72 Mo. 274; Clifton v. Sparks, 82 Mo. 115.]

The defendant asked sixteen other instructions, but in none of them is there anything upon which to hinge a claim that the liability of the defendant to a trespasser is limited to willful or wanton injury, unless it be in the demurrer to the evidence, as to the second count, asked at the close of the case. If the defendant intended to assert this proposition in that way, it should have stood upon it. But instead of doing so, it asked and the court gave the first instruction, above set out, which expressly recognized defendant's liability if it failed to use ordinary care in stopping the train or in disconnecting the caboose from the train, after it discovered the danger to the train from the brake-beam having fallen down on the track. So the defendant has waived the right to have such a theory, as to the scope of the demurrer to the evidence, considered, by obtaining

from the court an instruction which predicated a liability upon a different theory.

The other instructions asked by defendant were evidently prepared before the plaintiff dismissed his first count, for most of them refer to the alleged fraud and forgery by plaintiff in the use of Milligan's mileage ticket and in the signing of his name, and as that question was eliminated from the case by the dismissal of the first count, those instructions had no application to the case as it remained.   Such of the refused instructions as bore upon the second count were improper or inapplicable because they declared that the defendant was not liable at all if plaintiff was guilty of the fraud aforesaid, or because they proceeded upon the idea that there was some claim set up by the plaintiff that the defendant had not furnished safe machinery, or had not properly inspected the car, or that the plaintiff jumped from the car because the conductor ordered him to do so, when no such matters had been pleaded or asked as a ground for recovery.   The only negligence charged in the second count is failure to use ordinary care to stop the train or to detach the caboose from the train after the danger was known and when the peril was imminent.

It is conceded that there is a conflict in the evidence as to whether the caboose could have been detached from the train, after the danger was known to the defendant, in time to have avoided the injury to the plaintiff.   No attempt was made by the trainmen to do so, although they were requested by plaintiff and others to try.   The verdict is, therefore, supported by substantial testimony, and this court will not review the finding of fact.   [James v. Insurance Co., 148 Mo. 1; Feary v. Railroad, 162 Mo. 76.]

There can not be said to be a conflict in the evidence as to whether the train could have been stopped after the danger was known and before the accident.   The train was running up

grade at a rate of speed not as fast as a man could walk.   The testimony establishes the fact that it could have been stopped in one hundred feet anyway.   The danger was discovered before the train reached the switch, for the conductor said there would be danger of derailing the caboose when the switch was reached.   The train ran over four hundred feet after it passed over the switch before the accident occurred.   Therefore, there was ample time to have stopped the train after the danger was known and anticipated.   The train was approaching Clifton Hill, and there is a conflict—though very slight—in the evidence as to whether the conductor gave a simple stop signal or an emergency signal.   If it was the former, it would simply indicate to the engineer to stop at the station of Clifton Hill. If it was the latter, it would be a command to use every means at hand to stop as soon as possible.   The train did not stop until after the accident.   The fact, therefore, remained that if the conductor did not give the emergency stop signal he was guilty of negligence, and if he did give it and the engineer did not obey it, the engineer was guilty of negligence.   In either event the defendant did not exercise ordinary care to prevent the accident after it knew of the danger and that the peril was imminent.   Hence, there was sufficient evidence to support the verdict on the theory of liability upon which the second count was framed and upon which the case was submitted to the jury by the instructions of both parties.

## II.

The defendant assigns as error the action of the trial court in permitting the plaintiff to amend the second count, at the close of all the evidence, and in refusing to continue the case, upon the defendant's affidavit of surprise, except upon condition that the defendant pay the accrued costs.

The count, as originally framed, charged negligence in general terms. The amendment narrowed the issue by specifying the negligence, and thereby limited the plaintiff's right to recover to proof of the specific acts of negligence charged. This did not prejudice the defendant in any manner. Without the amendment the evidence had all been adduced and no objection had been interposed by the defendant that the second count did not state a cause of action. The evidence tended to show specific acts of negligence, which was admissible and was admitted under the general allegation of negligence. The amendment, therefore, did not change or enlarge the plaintiff's cause of action, but on the contrary limited it. [Chitty v. Railroad, 148 Mo. l. c. 75, and cases cited; Shaw v. Railroad, 104 Mo. 648; Schneider v. Railroad, 75 Mo. 295.]

Hence, there was no room to contend that the defendant was surprised by the amendment, and, therefore, the defendant was not entitled to a continuance under the statute, either as a matter of right or upon terms. In cases where a defendant is entitled to a continuance, upon filing an affidavit of surprise, it is improper to impose terms upon him, but where, as here, the amendment only specifies the negligence which was theretofore charged in general terms, it would have been error to have imposed terms upon the plaintiff and it afforded no ground to the defendant for a continuance. Hence, the action of the court in offering to continue the case at the cost of the defendant was more favorable to the defendant than it was entitled to ask. [Timber Co. v. Cooperage Co., 112 Mo. 383; Harlan v. Moore, 132 Mo. l. c. 488; Dickson v. Railroad, 104 Mo. l. c. 503.]

### III.

The defendant, by a supplemental motion, supported by

affidavits, filed some seventeen days after the trial, asked a new trial on the ground of newly-discovered evidence, in this, that on the trial the plaintiff testified that before the accident he had received two hundred dollars a month as wages and after the accident he had been able only to get one hundred and fifty dollars a month as wages, whereas, it is alleged that before the accident he never received more than one hundred and eighty-five dollars a month as wages, while after the accident he received as much as two hundred dollars a month as wages, and upon the further ground that the newly-discovered evidence would show that his injuries were not permanent. The trial court refused to consider such matters because the motion was filed out of time—more than four days after the trial. This is assigned here as error.

The question here involved was considered by this court as early as Williams v. St. Louis Circuit Court, 5 Mo. 248. In that case it was held that motions for new trial must be filed within four days after the trial, but that if not so filed the court might, during the term, upon suggestion of counsel, or upon it otherwise appearing that substantial justice had not been done, grant a new trial of its own right. If it refused to do so, no error would lie. If it did so, error would lie as in any other case to review the action of the court in granting a new trial. Judge McGirk held that if the motion was filed in time, the reasons or grounds therefor might be filed afterwards.

In Richmond's Admx. v. Wardlow, 36 Mo. 313, the case of Williams v. Court, supra, was cited and followed, by refusing to review the action of the trial court in refusing to grant a new trial when the motion was filed out of time.

The doctrine of the Williams' case has since been followed in State v. Marshall, 36 Mo. l. c. 404; Moran v. January, 52 Mo. 523; Bollinger v. Carrier, 79 Mo. 318. But in State ex

rel. Brainerd v. Adams, 84 Mo. 310, it was held that a trial court can not, of its own motion, grant a new trial, except, under section 3705, Revised Statutes 1889, when the triers of fact have erred in a matter of law or have been guilty of misbehavior.

The exact point here involved was before this court in Bank v. Porter, 148 Mo. l. c. 183. . The motion was filed within four days after the trial, and, afterwards, during the same term, the mover asked leave to amend by adding the additional ground of newly-discovered evidence, supporting the application by proper affidavits. The leave to amend was denied. The St. Louis Court of Appeals held that this was error, but this court reversed that decision, and held that all motions for new trial and all grounds therefor must be filed within four days after the trial.

Hence, there was no error in the trial court refusing to consider the supplemental motion for new trial filed in this case more than four days after the trial.

## IV.

The defendant moved to strike out of the plaintiff's reply so much thereof as set up a custom among travelling salesmen to use each others' mileage tickets. The trial court overruled the motion and defendant preserved the proper exceptions.

On the trial, however, the court excluded the evidence offered in support of such averments. The plaintiff abandoned his claim that he was a passenger, and the court, at defendant's instance, instructed that he was a trespasser. The question of such custom was therefore eliminated from the case, and if it was error to overrule the motion to strike out, it did the defendant no harm, and was corrected by the trial court in ex-

cluding the testimony in support of the allegation, and in instructing the jury that the plaintiff was a trespasser.

## V.

It is also urged that the instruction as to the measure of damages permitted a recovery for necessary expenses for medical attention, when there was no evidence that plaintiff had paid anything for such services or had become liable to pay therefor.    The evidence is that the plaintiff was treated by several physicians, at his request, among them Dr. Payne, who testified that his services were reasonably worth two hundred dollars.    Under these circumstances the plaintiff had become liable, under an implied assumpsit, to pay to Dr. Payne the reasonable value of his services.    This fills the requirements of the rule laid down in Smith v. Railroad, 108 Mo. 251, and in Robertson v. Railroad, 152 Mo. 393.

## VI.

Finally, it is claimed that the defendant is released from liability because the mileage ticket issued to Milligan and used by plaintiff contained an express release of liability from accidents received while travelling on a freight train.

This position is wholly inconsistent with the defendant's claim that it was such a fraud for plaintiff to use Milligan's mileage ticket and prevented the relation of passenger and carrier from attaching and left the plaintiff in the position of a mere trespasser.    The court so declared the plaintiff to be, at defendant's request.    Having succeeded in having the plaintiff denied the benefit of the mileage ticket, the defendant can not take advantage of the waiver of liability contained in the ticket.    It can not get the benefits without carrying the burdens

imposed by that ticket. The ticket is wholly outside of the case as it was presented to the jury, and as it stands before this court.

For these reasons the judgment of the circuit court is affirmed. All concur.