BROCK, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, April 26, 1904.

1. PRACTICE: Demurrer to Evidence: Waiver. Where the defendant, after the overruling of his demurrer to the plaintiff's evidence, offers evidence on his own behalf, he thereby waives his demurrer.

2. ———: ———: ———. But if he demurs to the whole evidence, his demurrer is not waived by asking instructions on the theory of the case adopted by the opposing counsel and the court.

3. STREET RAILWAYS: Trespasser: Ordinary Care. Where a person, who knew that cars on a certain line made extra trips, after the usual stopping time, for extra pay, boarded a car after it had stopped for the purpose of negotiating with the motorman for an extra trip, he was not a trespasser upon the car, but there by the implied invitation of the company's servants, and they were bound to use ordinary care for his safety while on the car.

4. ———: Negligence: Sudden Starting of Car. And where the conductor, with whom such person was negotiating for the extra trip, gave a signal to the motorman to go ahead, knowing that it would endanger such person, without warning such person of the danger and of his intention to start, and giving him a reasonable time to get into the car or alight, he was guilty of negligence.

5. ———: ———: ———. On the other hand, if the motorman started the car without a signal, when he had good reason to suspect persons might be on the platform getting on or off the car, he was negligent.

6. ———: ———: ———. It was not necessary to prove that the motorman was under the direction of the conductor, because it is a matter of common knowledge that motormen stop and start cars in response to signals given by the conductors and that such cars could not be operated with any degree of safety in any other way.

7. INSTRUCTION. It is not error to refuse an instruction which assumes the existence of facts contradicted by some of the evidence.

8. STREET RAILWAYS: Assumption of Risk. Where, in an action for injuries caused by the sudden starting of defendant's car, the evidence showed that plaintiff boarded the back platform of a car, after its last trip, for the purpose of negotiating for an extra trip, and was thrown from the car by the sudden starting of the car, it was not error to refuse an instruction that plaintiff assumed whatever dangers were incident to his position on the car, when the instruction leaves out of view evidence of the motorman that he was given a signal to go ahead.

Appeal from St. Louis Circuit Court.—*Hon. J. W. McElhinney*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Kiskaddon & Matthews* for appellant.

The court ought to have sustained defendant's demurrer to plaintiff's evidence, or ought to have sustained it at the close of the whole case. Plaintiff knew when he boarded the rear platform of the car that it was the end of its run and that it would carry no more passengers. When he boarded the car he knowingly and voluntarily assumed the risk of the car starting without regard to his presence. White v. Railroad, 84 Mo. App. 411; Neville v. Railroad, 158 Mo. 293; Padgett v. Moll, 159 Mo. 143; Carroll v. Transit Co., 107 Mo. 653; Harris v. Railroad, 89 Mo. 233; Sey-

mour v. Railroad, 114 Mo. 266; O'Donnell v. Patton, 117 Mo. 13. The third instruction given at the instance of the plaintiff is erroneous. There is not a scintilla of evidence that the "motorman was under the direction of the conductor, and was required to stop and start said car upon signals from the conductor." Instructions must be predicated on the evidence and are erroneous if they submit to the jury a question not in evidence. This is elementary law and hardly requires an authority to support it, but we submit from among the numerous decisions on this point the following: Culbertson v. Railroad, 140 Mo. 35; William v. Railroad, 96 Mo. 275; Frantz v. Hilterbrand, 45 Mo. 121; Engle v. Jones, 51 Mo. 316; Railroad v. Railroad, 118 Mo. 599; Raysdon v. Trumbo, 52 Mo. 35; Winters v. Railroad, 36 Mo. 468.

*R. H. Stephens* and *J. K. Hansbrough* for respondent.

STATEMENT.

Action for personal injuries caused by the following alleged negligence of defendant.

"That about the seventeenth day of August, 1902, plaintiff with other parties, went on to the rear platform of one of the defendant's Clayton cars, which had just arrived from Clayton and was standing on the tracks at Forsyth Junction in the city of St. Louis, for the purpose of arranging with the conductor of said car for passage from said Forsyth Junction to Clayton, it being then about twelve o'clock at night, and that being the last car from the city of St. Louis to Clayton.

"That while standing on said platform and talking to the conductor of the car with the view of being taken to Clayton on said car, defendant by its servants in charge of the running of said car, and who knew, or by the exercise of reasonable care, would have known, that plaintiff was standing on said rear platform, suddenly,

and without any notice or warning whatever, to plaintiff, negligently and, wrongfully started said car forward, at a rapid rate of speed, and within a few feet of the place of starting, the car made a sharp curve to the right, which said sudden starting, rapid rate of speed and curving to the right threw plaintiff violently from said platform, upon the space paved with stones or bricks between the two railroad tracks at that point, and plaintiff fell and struck said paved space with such force that he was thereby greatly bruised and injured.''

The answer was a general denial and the following plea of contributory negligence:

''And for further answer and defense defendant states that plaintiff's alleged injuries were caused by his own negligence in getting aboard defendant's car without then and there intending to become a passenger thereon, and after having so boarded said car, and after said car had started and got into rapid motion, plaintiff carelessly and negligently voluntarily left said car, while the same was in rapid motion, and by thus carelessly and negligently leaving said car while the same was in rapid motion plaintiff was thrown to the ground, and thereby and by reason of his own carelessness and negligence as aforesaid plaintiff received and suffered the alleged injuries of which he complains.''

The defendant at the time of the occurrence at which plaintiff alleges he was injured, operated a line of railroad, using electricity as the motive power, between Forsyth Junction, in the city of St. Louis, and the Log Cabin Club, in St. Louis county. The eastern terminus of the line was at Forsyth Junction in the city and the western terminus at the Log Cabin Club in the county. This line at that time connected at its eastern terminus at De Baliviere avenue with the Delmar cars running into the city, and passengers going out to Clayton from the city left the Delmar cars at Forsyth Junc-

tion, and took a car on this line, known as the Clayton line.

From about twelve o'clock at night the cars, which before and at that time were out on the Clayton line, ceased to run and were taken from Forsyth Junction south, passing around a loop at Forest Park, and from thence north to the De Baliviere sheds, about two blocks north of Forsyth Junction, where they were put up. No more cars ran over the Clayton line until morning. The Clayton line intersected De Baliviere avenue at right angles, and when these night cars finished their run for the night, they were transferred to the tracks on De Baliviere avenue by a track making a curve from the Clayton line to the Delmar line track on said avenue, it being about such a curve as street car tracks make in turning street corners in the city.

Within twelve or fifteen feet of this curve and north of it, and between the curve and the Wabash Railroad tracks, is a small watch house about fourteen feet square. This watch house is situated immediately south of the Wabash Railroad tracks and at it was stationed a watchman in the employ of the Wabash Railroad Company, whose duty it was to flag trains when required, and to control gates across De Baliviere avenue to protect street cars running along the avenue from being run into by trains on the Wabash railroad.

On August 17, 1902, at about twelve o'clock at night, plaintiff with his son arrived at Forsyth Junction on a Delmar car, intending to take a car on the Clayton line and go to Clayton where he lived. There either came on the same car with him or he found at Forsyth Junction, Mr. and Mrs. Gould and a man named Burrell. It was a clear starlit night, a number of electric lights were burning and everything about the place was light and in the condition it was usually in at that time of night. Gould and plaintiff learned from the Wabash

watchman, Stone, that the last car for that night had gone west on the Clayton line. They decided to wait for the first east-bound car on the Clayton line to ascertain if they could succeed in inducing the men in charge to return and carry them to Clayton.

Plaintiff testified that he knew the car on the Clayton line sometimes made an extra trip, if the men were paid to do so, and as the last car came back from the west he walked out and signalled to the motorman to stop; that the car stopped and he and Gould boarded it and were negotiating with the conductor about making a trip back to Clayton. He further testified as follows: "Mr. Gould got on and we started to ask the conductor if he would make the return trip to Clayton and he said, 'This is my last trip,' and I said, 'Won't you make a return trip?' and he says, 'How many are there?' I started to enumerate the number that there were in the party and then he said something about seeing the motorman and about that time the car started and started rapidly and I swung then—I was facing the conductor or towards the car—inside of the car, right-hand side of the car on the platform and I turned around to get a hold on the body of the car and I looked for the handle, but there was none there on that side. There was nothing but a door loop to open and shut the door with. The door closed on the outside, so I tried to pass my arm around the door post itself, but before I got a hold I was thrown off my feet and out into the street and from that time I knew nothing until I recovered in my mother's house." He also testified that when he got on, the head of the car was pretty well over the curve; that no signal was given to the motorman to start the car and that he fell off on the lefthand side of the car; that the conductor was standing in the door and he was on the platform facing him.

The evidence shows that plaintiff's injuries were severe and probably permanent. Gould's testimony

corroborated that of plaintiff in every particular up to and including the starting of the car. He testified that when it started up, he jumped off on the righthand side and saw plaintiff as he fell, and went to him and found him unconscious and helped to carry him and put him on the car (which was stopped and backed up) and then went with him on the car to the car barn. He said he did not know how plaintiff got off the car, whether he jumped off or was thrown off.

The testimony of the motorman was that he did not see plaintiff give him a signal, that he did not stop in response to any such signal, but to let off two or three people who got off at the front end of the car to take a Delmar avenue car; that he did not know plaintiff or Gould was on the car when he started it, and that he started it in response to a bell given him to go ahead; that the car was in the curve at the time and was started at a speed of about one mile an hour and increased to five or six miles as the car turned out on the curve; that the car ran about twenty-five feet when he received an emergency signal to stop, and it then ran about one hundred feet before he could stop it; that he learned a man was hurt and backed the car up and put plaintiff on it and carried him to the car barn.

Jones, who was the watchman for the Wabash Railroad at Forsyth Junction, testified that plaintiff and Gould got off the car as it started, then jumped on, and then jumped off. Plaintiff in rebuttal contradicted Jones' testimony positively.

A verdict for three thousand dollars was returned in favor of the plaintiff. Motions for new trial and in arrest of judgment being of no avail, defendant appealed.

BLAND, P. J. (after stating the facts.)—1. At the close of plaintiff's evidence defendant offered a demurrer to the evidence which the court denied. Plain-

tiff then introduced evidence in support of its defense, and again at the close of all the evidence moved for an instruction of nonsuit. The refusal of the court to grant either of these requests is assigned as error. By offering evidence in its own behalf after its demurrer to plaintiff's evidence has been overruled, defendant waived its demurrer. Mirrielees v. Railway, 163 Mo. 486, and cases cited. Its demurrer to the whole of the evidence, however, was not waived by asking other instructions on the theory of the case adopted by the opposing counsel and the court, and it is the duty of this court to review the case on all the evidence to see for itself if there was substantial evidence in support of the verdict. Bowen v. Railway, 95 Mo. 268; McPherson v. Railway, 97 Mo. 253; Weber v. Railway, 100 Mo. 194; Hilz v. Railway, 101 Mo. 36; Jennings v. Railway, 112 Mo. 268; Kerr v. Cusenbary, 60 Mo. App. 558; Flinn v. Bldg. Assn., 93 Mo. App. 444. In the light of plaintiff's evidence, that he knew the cars on the Clayton line sometimes made a trip to Clayton after midnight for extra pay, and that he hailed the car and went on it after it stopped for the purpose of negotiating with the car men for an extra trip, he was not a trespasser or intruder upon the car. He was there for a lawful purpose, on an implied invitation of the company's servants in charge of the car, to contract with them for an extra trip to Clayton, and these servants were bound to use ordinary care and diligence for his safety while on the car. Welch v. McAllister, 15 Mo. App. 492; Eisenberg v. Railway, 33 Mo. App. 90; Bunnell v. Stern, 122 N. Y. 544; Carelton v. Iron & Steel Company, 99 Mass. 216; Gordon v. Cummings, 152 Mass. 513; 2 Shearman & Redfield on Negligence, sec. 719a. And if it was dangerous to start the car with plaintiff standing on the rear platform, it was their duty to give him warning of their intention to start and a reasonable time to get into the car or get off before making the

start. The care required of the company's servants, in the circumstances detailed in evidence, was only ordinary care, hence the mere fact that plaintiff was injured is not evidence that they were negligent. The plaintiff's evidence shows that the motorman, on his own initiative, started the car out of the curve at a high rate of speed. There is no evidence that the motorman knew that the plaintiff was on the car. If then, he had no reason to suspect persons might be getting on or off the car, or standing on the rear platform at the time, and if his trip was at an end and there was nothing for him to do but to make the loop and turn in his car, and he was in the habit of doing this without a signal from the conductor, we would be inclined to doubt if there was sufficient evidence of negligence to send the case to the jury. But the evidence of the motorman is that he was given a signal to start. It is to be presumed that the signal was given by the conductor, who, as the evidence shows, was standing near the plaintiff engaged in conversation with him, and must from his experience have known whether or not it would endanger plaintiff's safety to start the car out of the curve and if it was dangerous to plaintiff, considering his position on the platform, there is no escaping the conclusion that the conductor was aware of the danger and was guilty of negligence in giving the signal to the motorman to go ahead without first warning the plaintiff of the danger and of his intention to send the car ahead. On the other hand, if he did not give the signal it was negligent in the motorman to start the car on his own motion when, as the evidence tends to show, he had good reason to suspect persons might be on the platform or getting on or off the car and it was his duty, in the circumstances, to have either waited for a signal from the conductor or have ascertained for himself that to start the car would not endanger any one and, we think, according to all the evidence, there was a lack of the exercise of ordinary

care at one or the other ends of the car, either by the conductor at the rear end or by the motorman at the front end. We think too, the evidence was sufficient to show that it was dangerous to one situated on the back platform as was plaintiff, to start the car rapidly out of the curve, and conclude that on the whole evidence the case was one for the jury.

2. It is contended that the following instruction given for plaintiff is erroneous for the reason there is no evidence that the motorman was under the direction of the conductor.

"3. If you believe from the evidence, that the plaintiff was standing upon the rear platform of defendant's car, for the purpose of requesting passage thereon from the conductor while the same was stopped and standing at Forsyth Junction; that said car was in charge of and being operated by its motorman and conductor, and that in operating the same, the motorman had control of the power which caused its motion, and so controlled the stopping, starting and speed of the car, and said motorman was under the direction of the conductor, and was required to stop and start said car upon signals from the conductor by means of a bell to be rung by the conductor; that either of them, the said conductor or motorman, knew, or by the exercise of ordinary care would have known, that plaintiff was so standing upon said platform, and failed to exercise ordinary care for the safety of the plaintiff in the starting of said car, and that such failure caused the said car to be started suddenly and without notice or warning to plaintiff, at the rapid rate of speed, upon a curve in the track and thereby caused the plaintiff to be thrown from the said platform of the car and injured, as the result of such failure in the exercise of ordinary care; then you should find that such failure constituted negligence."

It might be pertinent to inquire, in view of this ob-

jection, if the motorman was not under the direction of the conductor, how the car could be run orderly and with safety to passengers? It is a matter of common knowledge that motorman stop and start street cars in response to signals given by the conductors and that such cars could not be operated with any degree of safety in any other manner.

3. The defendant complains of the refusal of the following instruction asked by it:

"8. If the jury believe from the evidence that the car upon which plaintiff entered at the time he received his alleged injuries, if any, had at that time got to the terminus of the road upon which said car run, and to the end of its run, and that said car was then to be taken without carrying any more passengers to the car sheds and put up there for the time being, then the motorman of said car had a right to assume that there was no person on said car except the conductor and himself, and to act upon such assumption; and under such circumstances it was not negligence on the part of said motorman to run said car at a rapid speed around any curve upon the route to said car sheds, unless said motorman at that time actually knew that plaintiff was on the back platform of said car; and if the jury find from all the evidence that said motorman did not at that time know that plaintiff was on the back platform of said car, then the verdict must be for defendant."

The trouble with this instruction is that is assumes the existence of facts which are contradicted by the evidence referred to in the first paragraph of this opinion.

4. The defendant asked the following other instruction which the court refused to give:

"9. If the jury believe from the evidence, that plaintiff when he boarded the back platform of defendant's car, knew that said car had arrived at the end of its trip, and that it was not the intention of the defendant's employees in charge of the car to go back or make

a return trip, and that thereupon plaintiff got onto the back platform of said car to request and to try to induce the conductor of said car to make a return trip, then plaintiff assumed whatever danger might be incident to being on said back platform under such circumstances;

"And if the jury believe that under such circumstances and while plaintiff was on said back platform that the motorman of said car was on the front platform of said car, and did not know that plaintiff was on the back platform thereof, and that said motorman without knowing that plaintiff was on said back platform started said car and ran it rapidly around a curve in defendant's railroad, for the purpose of taking said car to the car sheds, and that by reason of said rapid rate of speed and said curve plaintiff was thrown from the car and injured as alleged, then such injury was caused by plaintiff having voluntarily assumed whatever dangers were incident to his position on said back platform under such circumstances and the verdict must be for the defendant."

This instruction leaves out of view the evidence of the motorman that he was given a signal to go ahead.

Defendant's eighth refused instruction is opposed to our view of the law as expressed in the first and fourth paragraphs of this opinion and for this reason we think it was erroneous. We think the case is a close one. The evidence tending to establish negligence on the part of the defendant is not strong or convincing but when considered as a whole it tends to show that the servants of the company in charge of the car were negligent in the management of it and negligently exposed plaintiff to a danger which they could, by the exercise of ordinary care, have avoided, and we conclude that the case was properly submitted to the jury and affirm the judgment. *Reyburn* and *Goode, JJ.,* concur.