MARTIN v. DALE.

Opinion delivered November 11, 1929.

*Jones & Jones,* for appellant.

*Henry Moore, Jr.,* for appellee.

SMITH, J. In 1925 Lenz, as agent for Martin, trustee, obtained from Mrs. May B. Dale an oil lease, which expired November 18, 1928. As a consideration for this lease, a substantial sum of money was paid, and an interest in any oil which might be produced was reserved. Lenz began his search for oil and gas, and put down half-a-dozen or more wells, all of which proved to be dry holes. Notwithstanding all these failures, Lenz's faith continued, and in June, 1928, he commenced negotiations for a six months' extension of the lease. These negotiations were had with Miss Lois Dale, the daughter and agent of the owner of the land.

Lenz used fuel oil in connection with his drilling operations, which he transported in barrels in a truck from Texarkana. In doing so he used a State highway known locally as the East Ninth Street Road, as the highway penetrated the city of Texarkana through Ninth Street. Mrs. Dale's plantation was about eighteen miles east of Texarkana, and was adjacent to and north of this highway.

A drainage district had been organized a number of years ago, which dug a ditch on the property line of the Dale plantation, and parallel to the ditch was a public

road known as the Ditch Line Road. This road started at the East Ninth Street Road, and ran north and south, and furnished means of ingress into the Dale plantation. The ditch makes a Y, along the right prong of which the road extended to a point near an elevation known as the "Mounds," which was from three to twelve feet higher than the surrounding land, and about six hundred acres in area. A portion of this elevated land was on the Dale plantation, and it was here that Lenz carried on his exploration for oil and gas. The Mounds was about half a mile north of the East Ninth Street Road.

During the years 1925, 1926 and 1927, and until November, 1928, ingress to the wells being drilled on the Mounds was had over the spoil bank on the west side of the main line ditch for a half a mile to a bridge which spanned the ditch, and it is a half a mile from the bridge to the Mounds, and for this distance Lenz used, first, an old public road built by the county, which ran inside of the Dale field, and later, a new public road built on the line between the Dale and the adjoining plantations.

In 1926 a private road was constructed from the East Ninth Street Road to a place on the plantation called the Dale headquarters, which was later graveled, and was thereafter known as the gravel road, and this litigation arose over the use of this road by Lenz in his drilling operations.

Lenz asserted that the use of the gravel road was necessary to reach his wells after the Ditch Line Road became impassable; and he also contends that, after the controversy over its use arose, he made a contract giving him the right to use it, and, when the exercise of this right was denied him, he brought this suit to enjoin Mrs. Dale and her agents from interfering. A temporary restraining order was granted, which was dissolved on the final hearing, and damages were awarded on the dissolution of the injunction covering the use of and the damage to the gravel road.

The law of the case has been settled by prior decisions of this court, and is succinctly restated in the case

of *Vassar* v. *Mitchell*, 169 Ark. 792, 276 S. W. 705. It was there said: "If one sells to another a tract of land surrounded by other land of the grantor, a right of way across such other land is a necessity to the enjoyment of the land granted, and is implied from the grant made. *Belser* v. *Moore*, 73 Ark. 296, 81 S. W. 219. The principle, from which the doctrine of implied grants of easements over other lands of the grantor springs, is said to be found in the maxim that 'one shall not derogate from his grant,' and the kindred one, that the purchaser takes the land bought, and whatever right in the hands of the grantor as is necessary to its enjoyment."

It is not questioned that Lenz, as agent for the trustee to whom the lease was given, had the right of access to the lands covered by the lease; but this is a right which arose out of necessity, and not as a matter of convenience. In other words, while the right of entry was implied, this right did not authorize Lenz to enter as he pleased; it was his duty to do so in the manner least injurious to his grantor, and if a means of ingress existed when the lease was taken, and which continued to be available, this entry, and no other, should have been used, although it was not the most convenient.

It is undisputed that the gravel road was a private way, and there was therefore no right to use it if another was available, although not so convenient.

Prior to 1927, while Lenz was drilling under the original lease, there was a road along the ditch bank on the east side and parallel with the Ditch Line Road, but the evidence shows that this road was plowed into and made a part of the field, and a portion of it actually cultivated as such. There was a road leading from the East Ninth Street Road to the Mounds, which has been referred to as the Ditch Line Road, which was a public road; but this road was plowed up on December 18 by the county judge, and, while this was not done at Mrs. Dale's request, it was not done over her protest. There is some conflict in the testimony as to the condition of

the road after it had been plowed up, but we think it
fairly appears that the road was thereafter impassable,
and that it could not have been made passable without
undoing what the county judge had ordered done, and
this at a considerable expense. The reason for plowing
up the road appears to have been that it was not located
on the property line of the adjacent plantation, but, when
it was so located, it became impassable, at least for the
remainder of that winter. The testimony is to the effect
that an unloaded wagon might have been driven over it,
but not a loaded one.

The only other road was the gravel road, and Lenz
used this for some time before he was forbidden to do
so, but Miss Dale testified that she was not aware of that
fact. No objection was made to the use of the gravel
road by Lenz and others in their automobiles, but objec-
tion was made to the use of the road by the truck in
which the oil was carried. This was a one ton Ford
truck, and six barrels of oil was its load limit over a road
of any kind.

An understanding of some kind was arrived at be-
tween Lenz and Miss Dale for the use of this road, but
the testimony is in hopeless conflict as to the terms of
this agreement. It is certain that Lenz paid $100 for the
use of this road, but whether the payment was for past
or future use is not certain. The chancellor found there
had been no agreement for the future use of the road,
and we will not reverse that finding of fact, as we are
unable to say that it was clearly against the preponder-
ance of the evidence. But, even so, we are of the opinion
that the gravel road had become a "way of necessity,"
and that only by using it could the right to explore for
oil granted by the lease be exercised before the lease had
expired.

The court assessed the damages at $100 on dissolv-
ing the injunction, but we think this finding is against
the preponderance of the evidence. In addition to pay-
ing the hundred dollars, Lenz maintained the road by

dragging it after every rain, and by regraveling it when this became necessary, and we think the testimony shows the road was in as good condition when the injunction was dissolved as it was when Lenz began to use it. Of course, the use of the road itself was a valuable right, but this use, as we have shown, became an incident to the lease, and was presumably compensated by the consideration inducing the lease. The restraining order should not therefore have been dissolved before the expiration of the renewed lease.

It will be unnecessary to remand the cause to order the dissolution of the temporary restraining order, as the lease has now expired, and no present rights are claimed under it, but the decree for the hundred dollars will be reversed, and that cause of action dismissed.